UNITED STATES of America,

v.

John DICARLO, Nicholas A. Penachio, Gordon Kerner, Dicarlo Distributors, Inc., Nick Penachio Co., Inc., Landmark Food Corp., Defendants.

No. 00 CR. 0584(JSR).

United States District Court,
S.D. New York.

Feb. 19, 2001.

See also, 2000 WL 1457077.

## MEMORANDUM ORDER

RAKOFF, District Judge.

According to the indictment in this case, the New York City Board of Education ("Board of Education") solicits bids and awards contracts for the supply of three separate categories of food, namely, frozen food, produce, and groceries. Indictment ¶ 10. The indictment further alleges that, beginning in 1991, certain of the defendants conspired to rig the bids on produce. *Id.* ¶ 19(a). Defendants John DiCarlo and DiCarlo, Inc., however, only "joined the conspiracy in approximately 1997. Prior to that time, DiCarlo, Inc. had bid competitively on particular bids to supply food, including frozen food, produce, and groceries, to the [Board of Education]... [But after joining the conspiracy in 1997], DiCarlo, Inc. then agreed to take [another conspirator's] place as the low bidder among the conspirators for future [Board of Education] contracts to supply produce to schools in Manhattan, and to stop bidding competitively for, contracts to supply frozen food to the [Board of Education].... " *Id.* ¶ 19(f).

Trial is firmly scheduled for February 28, 2001, and it appears that only the two DiCarlo defendants will contest the charges.[1] By letter dated January 30, 2001, the Government purported to provide notice of "other crimes" evidence it would seek to introduce on its case in chief under Federal Rule of Evidence 404(b). After the Court held that the January 30 letter was too vague to provide adequate notice even under the modest requirements of Rule 404(b), *cf. United States v. Richardson*, 837 F.Supp. 570, 575–76 (S.D.N.Y.1993), the Government submitted an amended notice dated February 5, 2001 (the "February 5 Notice"), which sets forth three categories of "other crimes" evidence that the Government seeks to offer under Rule 404(b) and various subcategories within each category. The DiCarlo defendants promptly moved for exclusion of all such evidence, and the Court heard extensive oral argument and received written submissions from both sides. Upon consideration of the foregoing, the Court now rules as follows:

I. The Government will *not* be permitted to introduce in its case-in-chief on the basis of Rule 404(b) the "other crimes" evidence described in the second paragraph of the February 5 Notice relating to the alleged efforts of the DiCarlo defendants to assist other conspirators in rigging three produce bids made to the Board of Education in 1992 and 1993. Such evidence, which is tantamount to alleging that the DiCarlo defendants participated in 1992 and 1993 in the very conspiracy alleged in the indictment, is flatly at variance with the indictment itself, which, as quoted above, alleges that the DiCarlo defendants were competitive bidders until joining the conspiracy in 1997. *See* Indictment ¶ 19(f). As the Court has already held, for the Government to offer such evidence as part of its direct proof of the alleged conspiracy would constitute an impermissibly prejudicial variance and hence must be precluded. *See* transcript of hearing, Feb. 13, 2001 ("Tr.") at 21. *See generally, e.g., United States v. Weiss*, 752 F.2d 777, 789 (2d Cir.1985). The Government's attempt to introduce such evidence under the alternative guise of Rule 404(b)

---

1. Counsel for all other defendants are reminded, however, that the fixed trial date of February 28, 2001 applies to all defendants as to whom the case remains open on that date and that no further adjournments will be granted.

cannot conceal the fact that the claim that the DiCarlo defendants participated in rigging produce bids in 1992–93 represents a last-minute, highly material shift in the Government's theory that is fundamentally unfair to the defendants and to the orderly processes of justice.

■ II. The Government will also not be permitted to introduce in its case-in-chief on the basis of Rule 404(b) the "other crimes" evidence described in the third paragraph of the February 5 Notice. The first sentence of that paragraph relates to the DiCarlo defendants' alleged agreement to assist a co-conspirator named Liebertoff in rigging grocery bids to the Board of Education in 1997–99 by no longer making competitive bids in the grocery area. In its February 5 Notice and some of its initial argument, the Government implied that such evidence should be admitted as proof of the charged conspiracy itself on the theory that the agreement of the DiCarlo defendants not to submit bids on groceries contracts during 1997–99 was part of the *quid pro quo* for other competitors' agreement not to underbid the DiCarlo defendants' rigged produce bids. Later, however, the Government's position seemed to be that this evidence represented a contemporaneous "side deal" with co-conspirator Liebertoff that should therefore be admitted as "other crimes" evidence bearing on the "background" of the conspiracy as well as on alleged issues of knowledge and intent.[2] *See, e.g.,* Tr. 66–67; Govt. motion papers dated Feb. 16, 2001. All of this, however, amounts to nothing more than another thinly-guised attempt to materially vary from the indictment, which alleges that in return for get-ting the winning bids on the produce contracts the DiCarlo defendants forebore bidding, not on the grocery contracts (as to which the indictment is silent in this respect), but on the frozen food contracts.[3] *See* Indictment ¶ 19(f). Similarly; the grocery bids here in question were not included in the Government's particularization, dated August 16, 2000, of which contracts were involved in the alleged conspiracy. *See* Tr. 53–54; Government letter dated Aug. 16, 2000, particular # 17I. It is far too late, far too prejudicial to defendants, and far too confusing to the jury, to introduce a conspiracy to rig grocery bids, whether through the device of 404(b) or otherwise.

■ As for the remainder of the third paragraph of the February 5 Notice, which chiefly refers, in mostly nebulous fashion, to a series of alleged agreements by the DiCarlo defendants to bid or not to bid on various food contracts in Nassau and Suffolk counties at various times in the 1990's, the introduction of proof of such broad, vague, and ephemeral matters in this already complex but reasonably focused case would so hopelessly confuse the jury as to substantially outweigh, both in terms of unfair prejudice and of confusion, any possible probative value.

■ III. Finally, with respect to the Government's final category of 404(b) evidence, as set forth in the fourth paragraph of the February 5 Notice, the Court reconfirms its prior determination to defer ruling on the admissibility under Rule 404(b) of the various "false statement" items comprising this final category until they are actually offered at trial. *See* Tr. 49. This makes sense, among other reasons, be-

---

2. The DiCarlo defendants, for their part, represent that the usual issues of background, knowledge, and intent are not materially involved in this case because the only genuine issue in the case is whether they agreed to an illicit proposal to rig bids allegedly made by conspirator Jack Doody. *See, e.g.,* Tr. 61–63. Defendants will be held to these representations, which form part of the backdrop to the Court's rulings here.

3. Indeed, it was partly on the basis of this allegation that the Court, while accepting the Government's contention that the frozen food conspiracy indicted in the companion case before Judge Chin is a legally separate conspiracy, indicated that the Government would be permitted to introduce some modest references to the frozen food conspiracy in its proof here.

cause some or all of these items may also be offered on other bases than Rule 404(b), and the combined probative value, *vel non,* of such items can therefore best be assessed at the actual time of the proposed introduction (which, however, should first be raised at side-bar conferences). In this regard, the Court also reminds counsel that the rulings in sections I and II, *supra,* precluding the introduction of certain "other crimes" evidence under Rule 404(b), does not necessarily preclude certain aspects of the same proof from being offered, and admitted, on other, independent grounds (such as, *e.g.,* for impeachment in appropriate circumstances). Counsel are also reminded that the Government may renew previously-rejected proffers under 404(b) if the defense "opens the door" at trial.

SO ORDERED.